UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLYDE CHAMBERS** | **CIVIL ACTION** |
| | **NO. 04-2667** |
| **VERSUS** | |
| | **SECTION "T"** |
| **JOSHUA MARINE, INC.** | **MAGISTRATE 2** |

Before the Court is a Motion for Summary Judgment [Doc. 23] filed on behalf of Defendant, St. Paul Fire & Marine Insurance Company. This matter was submitted for the Court's consideration with oral argument on January 11, 2006. The Court, having reviewed the arguments of counsel, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

## ORDER AND REASONS

### I.   PROCEDURAL BACKGROUND

Plaintiff, Clyde Chambers ("Chambers"), initially filed suit against Joshua Marine, Inc. ("Joshua Marine") and subsequently filed a First Supplemental and Amending Complaint with the evident intent to bring a direct action claim against St. Paul Fire & Marine Insurance

1

Company ("St. Paul")  pursuant to LA R.S. 22:655.  St. Paul, then, filed this Motion  for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, stating that St. Paul's policy does not provide coverage for the claim that is the subject of this litigation and thus, Plaintiff's direct action against St. Paul should be dismissed with prejudice.  Joshua Marine filed an Opposition to St. Paul's Motion for Summary Judgment, arguing that the basis of St. Paul's Motion is flawed, and St. Paul has a duty to provide Joshua Marine with both liability coverage and an appropriate defense for the alleged accident, which forms the basis of this action.

## II.     BACKGROUND

On April 14, 2004, Plaintiff, Clyde Chambers, was employed as a Project Manager by Baker Energy.  Baker Energy was performing contract work for Panaco.  In connection with that work, plaintiff was riding on the CAPTAIN BRUNO (Official Number 590415), a 45 foot, Coast Guard inspected crewboat, owned and operated by Joshua Marine, Inc., which was providing transportation in connection with the Panaco project.  This case involves a claim for a broken ankle sustained by Plaintiff, while riding as a passenger on the CAPTAIN BRUNO.  At the time of the accident, movant, St. Paul, had in full force and effect its Charter Boat Policy of insurance No.SFG0001943 naming Joshua Marine as an insured.

## III.     LAW AND ANALYSIS

### A.     Law on Summary Judgment

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (emphasis added). Thus, if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B.   St. Paul's Arguments In Support of Its Motion for Summary Judgment

St. Paul argues that there is no possibility that reasonable minds could conclude that St. Paul's policy afforded coverage to Joshua Marine because according to St. Paul, Joshua Marine breached several conditions or express warranties that it was bound by, when it accepted the policy. St. Paul states that the established standard in American maritime law is that representations made by an insured in a contract of marine insurance are subject to the standard of *uberrima fides*, or "utmost good faith." Sun Mutual Insurance Co. v. Ocean Insurance Co., 107 U.S. 485, 510, 27 L.Ed. 337, 1 S.Ct. 582 (1883).

This doctrine requires the insured to disclose to the underwriter all material facts affecting the risk. Sun Mutual, at 510. Sun Mutual states the test of materiality as the

importance of a particular fact, "to the underwriter as likely to influence his judgment in accepting the risk." 107 U.S. at 509-10.  The duty is "independent of the intention and is violated by the face of concealment even where there is no design to deceive.' Id.

An assured's agreement to comply with the express warranties in the policy meets the materiality test because it contributes significantly to the underwriter's decision to insure the risk and how to set the premium.  Therefore, the breach of an express warranty, for example, an express warranty of seaworthiness in a marine insurance policy, automatically suspends coverage under the policy. Aguire v. Citizens Casualty Co. of New York, 441 F.2d 141 (5th Cir. 1971).  Where coverage is suspended as a result of a breach of a warranty of seaworthiness, the question of whether the seaworthiness proximately caused or contributed to the loss is irrelevant. Id., citing Gulfstream Cargo, Ltd. v. Reliance Insurance Co., 409 F.2d 974 (5th Cir. 1969). Likewise, the fact that the unseaworthy condition is transitory is irrelevant, because coverage is suspended during the tenure of the unseaworthy condition. *Id.*

St. Paul's claim is that, at the time of the accident, Joshua Marine was in material breach of several express warranties contained in St. Paul's policy No.SFG0001943.  Specifically, the CAPTAIN BRUNO was being operated in clear violation of express warranties in **Section I**, the **General Conditions**, of the policy, namely: the **Seaworthiness Warranty**; the **Licensed Captain Warranty** and; the **Persons on Board Warranty**.  Therefore, St. Paul states that the policy was suspended during the period of breach and does not provide coverage for this claim.

       **1.**     **Seaworthiness, Licensed Captain, and Persons on Board Warranties; Named Operator Endorsement**

The **Seaworthiness Warranty** states:

*Warranted at the inception of the policy that the vessel shall be in a seaworthy condition and thereafter, during the currency of this policy, you shall exercise due diligence to keep the vessel seaworthy. Seaworthy means the vessel shall be kept, in all respects, fit, tight, properly manned, equipped, supplied and in a navigable condition for its intended use and be operated and maintained in full compliance with all Coast Guard and local laws and regulations.*

It is undisputed that the CAPTAIN BRUNO carried more than six passengers and was not being operated by a licensed captain. Coast Guard regulations require that a "small passenger vessel" carrying six (6) or more passengers, or an "uninspected vessel" that carries less than six passengers, be operated by a licensed captain. (46 U.S.C. Subtitle II, Part F, Chapter 89, § 8902 and 8903). According to St. Paul, having the vessel operated in accordance with all Coast Guard regulations materially affected the underwriter's decision to insure this risk; so much so that it was made an express warranty in the policy. Thus, St. Paul contends that the CAPTAIN BRUNO was not properly manned at the time of the accident, nor was it being operated in compliance with all Coast Guard and local laws and regulations, which, by definition, meant that the vessel was unseaworthy at the time of the accident.

The **Licensed Captain Warranty** states:

*Warranted that while the craft is engaged in a commercial venture, a licensed captain will be aboard the vessel at all times.*

The Licensed Captain Warranty does not specifically require the licensed captain to be *at the controls* at all times, but St. Paul argues that, construing the policy as a whole, it is clear that

5

the parties' agreement was that the vessel was to be operated by a Coast Guard - licensed captain when the vessel was carrying passengers for hire as it was at the time of the accident. Captain Glenn Davis admitted that he permitted Troy M. Randazzo, a Baker production operator, to operate the vessel without verifying that he had a valid license or even asking Randazzo if he had one. St. Paul claims that this breach of the Licensed Captain Warranty precludes coverage.

The **Named Operator Endorsement** states in pertinent part:

*Named Operator means the Named Insured and any other person, so designated by the Named Insured and approved by Us, to operate the insured watercraft. Named Operators approved to operate the insured watercraft are listed on the Named Operator Schedule included with this endorsement.*

*It is hereby warranted that all coverage provided under this policy is null and void when the insured watercraft is operated by anyone other than those persons listed on the Named Operator Schedule.*

The Named Operator Schedule includes Captain Davis, but does not include Randazzo. St. Paul contends that the clear and unambiguous language of the endorsement makes all coverage under the policy null and void in the event of its breach, at least during the period of the breach.

The **Persons on Board Warranty** states:

*Warranted that a maximum of eight people will be carried on board, of which no more than six shall be passengers, while the insured watercraft is engaged in a commercial venture.*

There were at least eleven persons aboard the vessel at the time of the accident, ten of

6

whom were passengers. Materiality is demonstrated by the fact that this was made the subject of an express warranty in the policy.

Finally, St. Paul points to its **Liability Coverage Exclusions**, which states in pertinent part:

> *We will not cover loss or expense arising from:*
>
> *-Fines, penalties, punitive damages or exemplary damages.*

Therefore, to the extent that the Complaint raises a claim for punitive or exemplary damages, St. Paul argues that coverage for that claim is specifically and explicitly excluded by the clear and unambiguous terms and conditions of the policy.

###### C. Joshua Marine's Opposition to Motion for Summary Judgment

Joshua Marine's position is that this matter is governed by Louisiana law, not Maritime law, and that the circumstances surrounding the accident and the charter boat policy are replete with issues of fact and ambiguities which warrant the upholding of coverage, not just a denial of St. Paul's Motion for Summary Judgment. Joshua Marine states that if Louisiana law applies, it calls for denial of St. Paul's motion regardless of whether or not warranties were actually breached, and, even if federal law applies, St. Paul's Motion for Summary Judgment should be denied because St. Paul cannot prove any breach of warranty absent genuine issues of material fact and policy ambiguities.

The bulk of St. Paul's argument is based on Federal law, specifically relying on the doctrine of *uberrimae fidei*, which holds that the utmost good faith on behalf of the insurer is required. However, the Supreme Court has concluded that the regulation of marine insurance is,

in most instances, properly left with the states. Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310 (1955). While the mere breach of a warranty is sufficient to void coverage under *uberrimae fidei*, Louisiana law requires not only breach of a warranty, but also intent to deceive.

## IV.    COURT'S ANALYSIS

The Fifth Circuit held in Albany Ins. Co. v. Anh Thi Kieu that "the interpretation of a contract of marine insurance is -- in the absence of a specific and controlling federal rule -- to be determined by reference to [the] appropriate state law." 927 F.2d 882, 886 (5th Cir. 1991), (*quoting* Ingersoll-Rand Financial Corp. v. Employers Ins. of Wausau, 771 F.2d 910, 912 (5th Cir. 1985). In Albany, a maritime insurance case that originated in Texas, the Fifth Circuit held that the state of Texas' insurance laws applied and not the federal maritime rule of *uberrimae fidei*. Id. In making that determination, the Court weighed three factors: (1) whether the federal maritime rule *uberrimae fidei* constitutes "entrenched federal precedent;" (2) whether the state has a substantial and legitimate interest in the application of its law; and (3) whether the state's rule is materially different from the federal maritime rule. Id.

In consideration of the first factor, the Fifth Circuit stated that "none of the opinions of the Fifth Circuit which have cited the *uberrimae fidei* doctrine authoritatively have concluded that the doctrine applies to the exclusion of state law." Id. For that matter, no Fifth Circuit opinion has ever explicitly authorized the application of the *uberrimae fidei* doctrine to invalidate a marine insurance policy. Id. The Court further stated, "the *uberrimae fidei* doctrine, in sum, is a rule which this Court has recognized, *but never applied.* We therefore conclude . . .

that the *uberrimae fidei* doctrine is not 'entrenched federal precedent.'" Id.

Secondly, the Albany Court also found that Texas had a "substantial and legitimate interest in the application of its law." Id. The "regulation of insurance relationships, including marine insurance relationships, has historically been a matter of state concern." Id. at 888 (*citing* Wilburn Boat Co., 348 U.S. at 316, 75 S.Ct. at 371). The Court concluded that "states are far better equipped to balance the risks that each party to an insurance contract endures." Id. Similarly, this Court holds that Louisiana has a substantial and legitimate interest in the application of its' own insurance laws.

The final factor delineated by the Fifth Circuit in Albany is whether the state's rule is materially different from the federal maritime rule. Id. The Fifth Circuit took notice of Texas' insurance law in that "an assured's misrepresentations may invalidate the policy of insurance, but only if the insured intended to deceive the insurer." Mayes v. Massachusetts Mutual Life Ins. Co., 608 S.W.2d 612, 616 (Tex.1980). "Texas law, unlike federal law, imposes an appropriate limitation that relatively minor misstatements which the insured did not intend to make do not afford the insurer an excuse to refuse payment." Albany at 889. The fundamental nature of both laws, however, is the same. Texas insurance law shares the concern of federal maritime law that an assured should not profit from her material misrepresentations to the underwriter. Id.

Likewise, Louisiana's law is very similar to that of Texas' in that a misrepresentation will not defeat or void the contract unless that misrepresentation or warranty is made with the intent to deceive. Louisiana Revised Statute 22:619(a) states, "no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or

9

in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive."

## V.     CONCLUSION

This Court agrees with Defendant that Louisiana law, and not Federal Maritime law, should apply in this matter. Therefore, a mere breach of a warranty is not enough to void coverage. To the contrary, St. Paul must prove that Joshua Marine had an intent to deceive in addition to the breach of any warranty. It is the holding of this Court that, based on the evidence provided at this time, there are genuine issues of material fact that are best resolved by the trier of fact after all the testimony has been heard and all the evidence presented. Specifically, there are issues of material fact regarding whether certain warranties were actually breached, and, if so, whether an intent to deceive was present.

Accordingly,

IT IS ORDERED that the Motion for Summary Judgment [Doc. 23] filed on behalf of St. Paul Fire & Marine Insurance Company, be and the same is hereby **DENIED**.

New Orleans, Louisiana, this 26th day of April, 2006.

_____
UNITED STATES DISTRICT JUDGE
G. THOMAS PORTEOUS, JR.